HENRY GAMBS, PUBLIC ADMINISTRATOR IN CHARGE OF ESTATE OF AMANDA HOLLIDAY, Appellant, *v.* COVENANT MUTUAL LIFE INSURANCE COMPANY, Respondent.

1. *Practice, civil — Evidence — Dispute touching, etc.*— Where the facts are all admitted upon the record, the Supreme Court must pass upon their legal effect. It is only when they are disputed, and when there is evidence tending to sustain the claim of each party, that the losing one is concluded by the finding of the trial court.

2. *Insurance — Policy of by husband for benefit of wife, may be made payable to second wife.*— At common law, and prior to the statute (Wagn. Stat. 936, § 15), the wife had such an interest in the life of her husband that a policy taken out by him for her benefit would be valid; and where the husband died during the life of his wife it would be enforced. But not so as to her legal representatives where the husband survived her. The only ground upon which the policy could be sustained when issued, was the fact that the wife had a right to look to her husband for support. That object being lost by her death, the husband would not be bound to continue the policy for the benefit of her legal representatives. And he might change the policy for the benefit of a subsequent wife.

*Appeal from St. Louis Circuit Court.*

*George Denison,* for appellant.

I. The contract of insurance was the wife's, made with her husband's assent, and ratified by him. It is good, independent of any statute, by the common law. (Chit. Cont., 7th Am. ed., 160; Bunyon Life Ins. 199, 200; Gates v. Mudley, 6 M. & N. 423; Hart v. Stephens, 6 Ad. & Ellis, N. S., 942; Dalton v. Midland Railway, The Jurist, vol. 17, p. 719; Fiske *et al.* v. Cushman *et al.*, 6 Cush. 20; Draper v. Jackson, 16 Mass. 480; Stanwood v. Stanwood, 17 Mass. 57.)

II. The policy became absolutely the chose in action of the

wife, whether purchased with the husband's money or her own, and her title to it was never divested. (See the authorities cited above ; Holmes v. Holmes, 28 Verm. 765 ; Cox v. Morrow, 14 Ark. 617; Carter v. Cantrell, 16 Ark. 155 ; Searing v. Searing, 9 Paige, 283 ; Adams v. Brackett, 5 Metc. 280 ; Hayward v. Hayward, 20 Pick. 519.) The voluntary payment of premiums on a policy confers on the payer no interest in the policy. (Bunridge v. Roe, 1 Y. & C. C. C. 183, cited in Sharpstein's Dig. of Life Ins. 201 ; Triston v. Hardey, 14 Beav. 232 ; Gould v. Emerson, 99 Mass. 154 ; Swan v. Snow, 11 Allen, 224, which is identical and conclusive ; Leakey v. Maupin, 10 Mo. 368.) The rule is stated in Bunyon on Life Insurance, p. 199, as follows : "There seems to be no reason why a husband may not effect an insurance on his own life in his wife's name, in order to give her the benefit of the policy. In such a case the policy would be in the nature of a voluntary settlement by the husband upon her, the benefit of which, even upon her death in his lifetime, would pass by her will when made with his assent." (Sugd. Real Prop. Stat. 307.) After the wife's death the husband could only acquire title to or dispose of the policy by taking out letters of administration upon the estate of the wife, when the proceeds must be distributed by him according to our statute of descents and distribution. (Chit. Pl., 7th Am. ed., 35–6 ; Philliskirk v. Pluckwell, 2 M. & S. 394–5 ; Gillett v. Camp, 19 Mo. 404 ; Pickett v. Everett, 11 Mo. 568 ; Woods v. Simmons, 20 Mo. 363 ; Baldwin v. Carter, 17 Conn. 201 ; Curry v. Fulkington, 14 Ohio, 100.) While in England the husband, having reduced the wife's choses in action into possession as her administrator, could hold them absolutely in his own right, he did so by virtue of the twenty-fifth section of statute 29 Charles II, ch. 3. In this country he can only take *ex virtute matrimonii* in the absence of any special statute disposing of the wife's effects at her decease. The statutes of Missouri (1 R. C. 1855, p. 659, § 1 ; R. C. 1845, p. 421, §§ 1, 2, 3 ; Wagn. Stat. ch. 93) regulate this distribution. Before taking out letters he cannot recover the choses in action of the wife at all. (10 Mo: 386 ; 19 Mo. 404 ; 11 Mo. 568 ; 20 Mo. 363.)

III. The husband's attempted assignment, if valid, would not be a reduction to possession so that he could by the same act pass title. Nothing but actual payment is a reduction to possession of a wife's chose in action. No change of security could do it, nor could making it the consideration for a new supplementary agreement accomplish it. (Nash v. Nash, 2 Madd. 411 ; Croft v. Bolton, 31 Mo. 355; Charter Oak Life Ins. Co. v. Brant, 47 Mo. 422 ; Searing v. Searing, 9 Paige, 283.)

IV. Nor is the case of Kerwan v. Howard, 23 Wis. 108, adopted in Charter Oak Life Ins. Co. v. Brant, 47 Mo. 420, in point. The court held that the insurance statute there did not operate to take away the right which the husband possessed under the prior law of that State ; that he would have held the title previous to its enactment and held it afterwards, no change having been made by the insurance law. This contract is in the wife's name and the policy belongs to her, whether the common law or our statutes control the rights of the parties.

V. The record in this case presents the foregoing questions of law to be reviewed by this court. There is not a disputed fact in the case, nor was there any disagreement in regard to facts in the court below. The court erred in deciding against appellant on the facts stated, and he comes here to have the error corrected.

*Dryden & Dryden*, for respondent.

I. At common law the wife had no insurable interest in the life of her husband. (3 Kent's Com., 11th ed., 368 ; Kerwan v. Howard, 23 Wis. 108; Charter Oak Life Ins. Co. v. Brant, 47 Mo. 419, overruling McKee v. Phœnix Ins. Co., 28 Mo. 383.)

II. When this policy was issued in 1853, and when Mrs. Holliday died in 1856, there was no enabling act existing; and so the policy could not have availed her, even if her husband had died before her.

III. The policy was taken and held by the husband in his exclusive possession, intended by him as a provision for his wife in case she survived him, but in no other contingency to inure to her benefit.

BLISS, Judge, delivered the opinion of the court.

In 1853 defendant issued a policy of insurance upon the life of William Holliday, husband of plaintiff, Amanda, payable to her or her legal representatives. In 1856 his said wife Amanda died; but her husband, who had all along paid the premiums, continued to pay them until February, 1860, when, having remarried, he procured a memorandum upon the policy that it should stand for the benefit of his then wife and others named. Said William Holliday continued to pay the premiums until 1868, when he died; and on due proof of his death the defendant paid the amount called for by the policy, to the beneficiaries named in the memorandum. The plaintiff sues for the amount of the insurance, claiming that it belongs to the representatives of the deceased wife.

No instructions were given and no exceptions were taken to any ruling of the court; hence the defendant contends that there is nothing for us to review. But the facts are all admitted upon the record, and we must pass upon their legal effect. It is only when they are disputed, and when there is evidence tending to sustain the claim of each party, that the losing one is concluded by the finding in the trial court.

It will be perceived that the policy was issued and the wife died before the adoption in this State of the statutory provision expressly authorizing policies in the name of and for the separate use of the wife. It is hence contended that, as a common-law policy, it is void, inasmuch as the wife had no such insurable interest in the life of the husband as would sustain it.

Gambling or wager policies are those where the persons for whose use they issue have no pecuniary interest in the life insured. But the wife has a direct interest in the life of her husband. The law requires him to support her, and in most cases she is actually dependent upon him for support. This creates an interest, and her relation is not the same as that of a wife or child to the husband or father who takes out a policy upon their lives for his own benefit; and the language of Kent (3 Com. 368), that "the insurable interest in the life of another person must be a direct

and definite pecuniary interest, and a person has not such an interest in the life of his wife or child, merely in the character of husband or parent," does not authorize the conclusion that a wife has no pecuniary interest, independent of the statute, in the life of her husband. Judge Scott, in McKee v. Phœnix Ins. Co., 28 Mo. 383, whose opinion is criticised by counsel, takes, I think, a more sensible view of the question.

The original policy, then, must be treated as valid; and had the husband died during the life of the beneficiary, the conditions having been fulfilled, it could have been enforced. But it does not follow that the action of the husband, after the death of the wife, must be held to have been for the benefit of her representatives. The only ground upon which the policy could be sustained when issued, is the fact that the wife had a right to look to the husband for support. It was taken out for the purpose of securing her support after his death. The premiums were paid by him, and the whole thing was instituted and carried on for this laudable purpose. This object being forever lost, was the husband bound to continue the policy for the benefit of her representatives? Could he not surrender it, or, by failing to pay further premiums, let it lapse? Or could he not, with the consent of the company, change the beneficiaries? He must be held to have had that right. It amounts to a surrender of the old policy and the issue of a new one. Every payment made after the change was in the interest of the present wife. Suppose he had refused to pay at all, where would be the plaintiff, and what could he recover? The payments upon renewal were not for his benefit, and he has no claim to that which they secured.

The right of the husband, after the wife's death, to dispose of a policy obtained by him for her benefit, is sustained by the Supreme Court of Wisconsin in Kerwan v. Howard, 23 Wis. 108, and I know of no case where the husband would be required to keep the policy alive for the benefit of his heirs.

The judgment will be affirmed. The other judges concur.