HERMAN LEVY, Plaintiff, Appellant, v. WESTERN UNION TELEGRAPH COMPANY, Defendant, Appellant.

### St. Louis Court of Appeals, March 19, 1889.

Telegraphic Message: ERROR IN TRANSMISSION : MEASURE OF DAMAGES. The plaintiff's agent delivered to the defendant a message to be transmitted by telegraph to the plaintiff, and the operator, in sending it, so changed the words and figures as to make a message different in an important particular. *Held :* In the absence of any showing that the plaintiff was induced to act, and did act in detriment of his interest, on the faith of the erroneous message, or of any showing that he suffered any special damage in consequence of the error, the amount of the plaintiff's recovery cannot exceed the sum paid to the defendant for transmission of the message, with interest.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Nathan Frank,* for the plaintiff, appellant.

The failure to transmit and deliver the message in the form or language in which it was received is *prima-facie* negligence, for which the company is liable, and to exonerate itself from the liability thus arising, it must show the mistake was not attributable to its fault or negligence. *Bartlett v. Tel. Co.,* 62 Me. 209 ; *Rittenhaus v. Tel. Co.,* 44 N. Y. 263; *Baldwin v. Tel. Co.,* 45 N. Y. 744; *Tel. Co. v. Caraw,* 15 Mich. 521 ; *Turner v. Tel. Co.,* 41 Iowa, 458 ; *DeLaGrange v. Tel. Co.,* 25 La. Ann. 383 ; *Tel. Co. v. Mell,* 49 Ind. 53 ; *Candy v. Tel. Co.,* 34 Wis. 471 ; *Tel. Co. v. Griswold,* 37 Ohio St. 301 ; *Tel. Co. v. Tyler,* 60 Ill. 421 ; s. c., 14 Am.

Rep. 38 and notes; s. c., on 2d. appeal to supreme court of Illinois, 74 Ill. 168; *Ayer v. Tel. Co*, 4 N. E. Rep. 784. On the subject of damages, which really is the only question before the court because of the decision of the lower court in favor of plaintiff on the subject, giving the plaintiff merely the amount paid for the transmission of the message and which in effect limited the recovery to the amount stipulated for in the printed terms of the company's blank, we confidently rely upon the agreed statement of facts, which distinctly states what the damages shall be in case plaintiff is entitled to recover; namely, the difference between the price telegraphed by the operator by mistake for the coon skins and the price at which they were in fact sold in accordance with the correct writing of the message. The rule as to the measure of damages is just as simply laid down; the measure of damages for the negligence of a telegraph company, for failure to deliver a message sent by plaintiff's agent, is not the sum paid by him for its transmission but the damages actually sustained by plaintiff in consequence of its non-delivery. *Harkness v. Tel. Co.*, 34 N. W. (Iowa) 811, and the measure of damages for the negligence of a telegraph company by reason of a mistake in the transmission of a message is the loss incurred by reason of that mistake. *Tel. Co. v. Richman*, 8 At. Rep. (Pa).

*E. T. & C. B. Allen*, for the defendant, appellant.

No cause of action is stated in the petition. There was a fatal variance between the allegations and proof. The failure to deliver the message in the language in which it was received is not *prima-facie* negligence for which the company is liable. *Becker v. Tel. Co.*, 11 Neb. 87; *Breese v. Tel. Co.*, 48 N. Y. 137; *Lassiter v. Tel. Co.*, 89 N. C. 336; *Sweatland v. Tel. Co.*, 27 Iowa, 432; *Tel. Co. v. Gildersleve*, 29 Md. 232; *Womack v.*

*Tel. Co.*, 58 Tex. 176; *Hart v. Tel. Co.*, 66 Cal. 579; Gray on Tel., top p. 97; *Jones v. Tel. Co.*, 18 Fed. Rep. 717.    The measure of damages in the case of an obscure message is the price paid for transmitting same.    *Candee v. Tel. Co.*, 34 Wis. 471; *Daniels v. Tel. Co.*, 61 Tex. 457; *Mackay v. Tel. Co.*, 16 Nev. 222; Gray on Tel., sec. 87, p. 161, and sec. 97, p. 177.

BRIGGS, J., delivered the opinion of the court.

This is an action for damages brought by plaintiff against the defendant corporation for damages, resulting from a mistake by defendant in the transmission of a telegraphic message from New York to St. Louis.

Plaintiff in his amended petition avers that on the ninth day of February, 1884, he was a merchant doing business in the city of St. Louis under the name of Herman Levy & Co.    That on said day he had stored for sale with one J. Ruszit, in New York City, 12,392 coon skins.    That on request of plaintiff to Ruszit, to advise him of the price of coon skins on said day, Ruszit delivered to defendant at one of its offices in the City of New York, the following message, to be sent to the plaintiff for a certain compensation, agreed on and paid to it, to-wit:

"NEW YORK, Feb'y 9, 1884.

" *To Herman Levy & Co., 20 North Main Street, St. Louis, Mo.*

"Coon average sixty-two and one-half cents.
"(Signed)                    J. RUSZIT."

That defendant negligently transmitted and delivered to plaintiff another and different message, to-wit:

"NEW YORK, Feb'y 9, 1884.

" *Herman Levy & Co., 20 N. Main St., St. Louis, Mo.*
"Coon average *sixty-five* and one-half cents.
"J. RUSZIT."

That on the faith of this telegram, plaintiff ordered a sale of his coon skins, and that they were thereupon sold at sixty-two and one-half cents each, instead of sixty-five and one-half cents, by reason of which plaintiff sustained a loss of three hundred and seventy-one dollars. That said coon skins at the time of the sale were worth in the New York market sixty-five and one-half cents apiece.

To this petition, the defendant filed a *general denial.* The answer also contained other defenses, based on the printed contract at the top of the message sent, by which defendant claimed that it was relieved from all liability for errors in the transmission of an unrepeated message like the one sent by Ruszit to plaintiff. But under the view we have taken of the agreed statement of facts, and the deposition of Emil J. Stake, upon which the case was submitted to the court, we deem it unnecessary in any manner, to refer to or pass on the legal questions attempted to be raised by that portion of defendant's answer.

The case was submitted to the court on the following agreed statement of facts, omitting the caption, to-wit:

" It is hereby stipulated and agreed by and between the parties to the above entitled cause, that the defendant is a duly incorporated company, doing business pursuant to the laws of the state of Missouri concerning telegraph companies.

"That on the ninth day of February, 1884, J. Ruszit, for and on account of plaintiff, left at the defendant's office in the City of New York, a message to be transmitted by defendant to Herman Levy & Co., being the plaintiff, at number 20 N. Main street, St. Louis, the original of which message is herewith filed, and made a part of this agreed statement of facts, and marked exhibit 'A,' for which services said Ruszit

paid defendant for and on account of plaintiff the usual and customary charge for said service.

"That in forwarding said message, the operator in the employ of the defendant transmitted to the St. Louis office of defendant and delivered to plaintiff a message as is shown by the original message herewith filed and made a part of this agreed statement of facts, and marked exhibit 'B.' That the said message was an unrepeated message.

"That said parts of said messages which are exhibits 'A' and 'B' of this agreed statement, are to be regarded (*sic*) whether written or printed as a part of this agreed statement of facts.

"That, if plaintiff, under the pleadings and agreed facts, is entitled to recover any amount in excess of the sum paid by Ruszit for transmitting said message, the amount of such recovery should be the sum of $371.76.

"That the deposition of the witness, E. J. Stake, on file is to be regarded as forming a part of this agreed statement of facts, subject to all legal objections.

"EDMUND T. ALLEN, } Attorneys for Defendant.
"HY. H. DENISON,    }

"NATHAN FRANK, Attorney for Plaintiff."

The message sent, and the message delivered by defendant to plaintiff, are attached to the agreed statement of facts, but it is not necessary that they be copied into this opinion.

The deposition of Emil J. Stake, was taken in the case and is made a part of the agreed statement of facts.

Stake, in February, 1884, was a clerk in the fur store of J. Ruszit in the City of New York. Omitting the formal part of his deposition, the witness testified as follows :

Q. "Do you know the firm of Herman Levy & Co., of St. Louis ?" A. "I do, as constituted in 1884. Mr. Ruszit had business dealings with them then."

Q. "State whether early in February, 1884, Mr. Ruszit had on hand a quantity of coon skins which had been sent to him by Herman Levy & Co., of St. Louis." A. "He had."

Q. "Do you remember for what purpose those coon skins had been shipped by Herman Levy & Co., to Mr. Ruszit?" A. "For purposes of sale."

Q. "You paid for the transmission of that message?" A. "I did."

Q. "When did you next hear anything touching that message?" A. "About the sixteenth of February, 1887."

Q. "What is the difference in the aggregate between the price named in your telegram and the price named in the telegram received by H. Levy & Co.?" A. "$371.76."

Q. "State what, on that day, was the range of prices for coon skins in New York City?" A. "I don't know. The skins were worth to us an average of sixty-two and one-half cents; they might have been worth more to others, or less."

Q. "What is the variation in price of coon skins usually?" A. "There is really no market value for them. They are worth what people are willing to pay for them at the time they are offered. This may vary considerably on the same day. To some dealers they may have been worth seventy cents, and to others perhaps only sixty cents or even less on that day."

Q. "Did you ever receive back from the Western Union Telegraph Company the amount paid for the transmission of this message?" A. "No."

Q. "After you heard from H. Levy & Co., that the message received by them was different from the one sent by you, did you call at defendant's office for an explanation?" A. "I did."

Q. "What did they say in explanation?" A. "They said that the message was sent correctly from

their office and that they would look into the matter and trace it ( or something to that effect )."

Q. "Did they make this statement to you after looking up the original message ?" A. "They did. They looked up the original message which they showed me and then said they had sent it on correctly, that is coons average sixty-two and one-half cents, and said they would trace it, or words to that effect."

"Subscribed and sworn to before me, July 25, 1887. Between the hours aforesaid.

" E. J. STAKE.

" B. LEWISON, Notary Public."

There was a judgment for plaintiff for the sum of sixty-five cents the amount paid for sending the telegram and also for costs of suit. Both parties filed motion for new trial and both parties have appealed. There were instructions asked by both plaintiff and defendant, which were refused. The court gave one instruction on its own motion.

As this case was submitted to the court on an agreed statement of facts instructions were unnecessary. Where the facts are agreed on, instructions have no office to perform. The judgment in such a case is a mere conclusion of law.

The defendant urges many reasons before the court why the judgment is wrong, and why the judgment should be entered in this court for the defendant. Among others, defendant's counsel claims that the agreed statement of facts and the deposition of Stake fail to state a cause of action against defendant. We think the objection is well taken, as to any special damage sustained by plaintiff. In the first place the evidence fails to show how many coon skins plaintiff had in New York. The question might be solved by a calculation based on Stake's testimony. He stated that the difference in the aggregate between the price named in the telegram sent, and the telegram received, would

be $371.76. If the witness meant to say that if plaintiff's coon skins were sold at sixty-two and one-half cents each, that he received $371.76 less than he would have received if they had been sold for sixty-five and one-half cents each then the number of coon skins could be determined. But there is no testimony in the case tending to show that plaintiff sold his coon skins or if he did that he was induced to order the property sold upon the faith of the telegram he received, believing at the time that he would receive sixty-five and one-half cents instead of sixty-two and one-half cents. And further, that he would not have ordered the goods sold had he not believed from the telegram received, that he could and would receive sixty-five and one-half cents for his coon skins if sold on that day. There is no evidence that he ever ordered the goods sold, or of what he received for them. There may have been a mistake in the transmission of the message, and this may have resulted from defendant's negligence, but before plaintiff can obtain or sustain a judgment for special damages on account of such negligence, it must appear, and it devolved on plaintiff to show, that he was in some way damaged on account of defendant's negligence in the transmission of the message. Counsel have presented some very important legal questions, which ought to be adjudicated and settled in this state, but the courts are not constituted for the mere purpose of determining abstract questions of law. As the facts are all admitted it becomes our duty to dispose of the case here according to the legal effect of the agreed statement of facts; and we are not concluded by the finding of the trial court, as in ordinary cases, when there is evidence tending to prove the issues on both sides. *Gambs v. Ins. Co.*, 50 Mo. 44.

But because plaintiff failed to prove any special damage resulting from the mistake in sending the message, it does not follow that the judgment in this case

must be reversed.   It appears from the record that plaintiff's agent in New York delivered to defendant a message, to be sent and delivered to plaintiff in St. Louis.   It appears that *this* message was never sent or delivered to plaintiff.   Why this was not done, the defendant in no way explains.   The plaintiff at most is entitled to recover back from defendant the amount paid for the transmission of the message, together with the interest thereon.   The amount paid for sending the message was fifty cents, which with the interest added would amount to about sixty-five cents.   The judgment of the circuit court will therefore be affirmed. All concur.