KERMAN, an infant, by her guardian, vs. HOWARD, Admr., etc., impleaded with the TRAVELERS' INSURANCE COMPANY.

Where a husband survives his wife, having previously procured a policy of insurance on his own life for her benefit, and himself paid the premiums thereon, he may dispose of it by will or otherwise.

APPEAL from the County Court of *Milwaukee* County.

The plaintiff, *Frances Kerman*, is the only child of Ellen Hill, wife of Isaac Hill, by a former husband. Ellen Hill died in Milwaukee in the evening of February 20, 1867, and Isaac

Kerman, etc., vs. Howard, Admr., etc.

Hill also died in the same city early the next morning, both from injuries received at the explosion of a paper mill, and Isaac Hill was ignorant of his wife's death until a short time before his own. On the 12th of November, 1866, subsequently to his marriage with said Ellen, Isaac Hill procured an insurance on his life in the Travelers' Insurance Company, in the sum of $2,000, payable to the said Ellen Hill or her legal representatives; and the policy was deposited by him with one Ogden for the benefit of his wife, and remained in Ogden's possession until surrendered to Hill's administrator. Said Isaac Hill left surviving him two children by a former wife, Miranda and Amaranda, but had no issue of his marriage with Ellen Hill. After the accident, and after the death of his wife, Ellen, but without knowledge of her death, he made his nuncupative will as follows: "I want the $2,000 insurance I have, to go to my children Miranda and Amaranda, and to my step-child, *Frances*, in equal parts, provided my wife does not live. If she does, then to her." This will was admitted to probate, and *Samuel Howard* appointed administrator. Afterward, the plaintiff brought this action against the Travelers' Insurance Company, to recover the amount due on the policy, claiming the whole amount thereof as the legal representative and sole heir at law of Ellen Hill. The insurance company answered, admitting its liability on the policy, but alleging that *Samuel Howard*, as administrator of Isaac Hill, claimed the amount thereof, offering to pay the money into court, and praying that *Howard* be made a defendant. The money having been paid into court, the company was by order of court discharged of all further liability, and the suit proceeded as against *Howard* alone. The court held, on these facts, that the money should be paid to *Howard*, as such administrator, to be disposed of according to the will, and rendered judgment accordingly; from which the plaintiff appealed.

*Jenkins & Elliott,* for appellant, argued at length, that, under the statutes of this state, the husband does not succeed to his wife's personal property at her death. He also contended that the right of the wife and her children, in a case like the present, is expressly secured by § 5, chap. 95, R. S., and that the term " legal representatives," in the policy, must be understood as meaning the person legally entitled to take upon the wife's death under the provisions of that statute.

*Samuel Howard,* respondent, in person, contended that the rule that the husband is entitled to administer upon the estate of his intestate wife, and that her personal property, after the payment of her debts, belongs to him absolutely, has not been changed by chap. 95, R. S. He also contended that sections five and six of that chapter contemplate only the case where the wife, for whose benefit a policy of insurance has been effected, survives the husband; that if Mrs. Hill had survived her husband, she probably would have been entitled to the policy, and in case of her death the proceeds would have gone to her heirs; but that her interest in the policy ceased at her death, and it became vested in the surviving husband, and subject to his control.

COLE, J.   We do not deem it necessary to consider the question, so fully and ably discussed upon the argument, as to what were the rights of the husband by virtue of his marital relation, either at common law or under our statute of distributions, in the personal property of the wife at her death, whether reduced to possession or not. The controversy in this case is in regard to money paid on a policy of life insurance. Isaac Hill, in his life-time, procured an insurance on his life, payable, as expressed in the policy, to his wife, " Ellen Hill, or her legal representatives." The policy was deposited with a third party, where it remained until after the death of Mr. and Mrs. Hill. Mrs. Hill died February 20, 1867, leaving an only child, the

infant plaintiff. Her husband survived her but a few hours; and subsequent to her death, though without any knowledge thereof, by a nuncupative will, attempted to make a disposition of the amount of the policy. And we shall only con sider the question, whether the husband, having effected an insurance on his life for the benefit of his wife, and surviving her, can dispose of the insurance money by will or otherwise. On the part of the infant plaintiff it is contended, that where a husband effects an insurance on his own life for the benefit of his wife, and himself pays the premiums, since the insurance is effected for the benefit of a married woman, the husband, though he survives the wife, has no power or authority whatever over the policy, but that it goes to her children like her separate estate. This position, it is claimed, is sustained by section 5, chapter 95, R. S. That section reads as follows: " Any policy of insurance made by any insurance company on the life of any person, expressed to be for the benefit of a married woman, whether the same be effected by such married woman, or by her husband, or by any other person on her behalf, shall inure to her sole and separate use and benefit, and that of her children, if any, independently of her husband, and of his creditors and representatives, and also independently of any other person effecting the same in her behalf, his creditors and representatives; and in case of the death of the husband of such married woman, such policy and the benefit thereof shall not go to his executors or administrators, but shall belong to such married woman, and shall be for her sole use and behoof and that of her children."

The language of this statute is somewhat peculiar, but still we think it is not difficult of construction. In the first place, we suppose it enables the husband to effect a policy of insurance on his own life for the benefit of his wife, which, in case she survives him, goes to her free from his creditors and representatives. It also makes it lawful for a married woman her-

self, and for her own benefit, to effect an insurance on the life of her husband or any third person, which shall belong to her and her children.   It was said that a person must have a direct and definite pecuniary interest in the life of another in order to have an insurable interest (3 Kent, *368), or that if a direct pecuniary interest was not essential to the validity of the policy, some pecuniary loss or disadvantage must naturally and probably result from the death of the one whose life is insured, to the person obtaining the policy. *Miller v. The Eagle Life and Health Insurance Co.*, 2 E. D. Smith, 268; *Hoyt v. The New York Insurance Co.*, 3 Bosw. 440 ; *Loomis v. Eagle Life and Health Insurance Co.*, 6 Gray, 396; *McKee v. Phœnix Insurance Co.*, 28 Missouri, 383.   But this statute has authorized a married woman to insure for her benefit the life of any person.   And, besides, it is obvious that a third person might insure his own life, or insure the life of the husband for the benefit of the married woman.   In these cases, and perhaps in others embraced within the statute, the married woman has the benefit of the policy independently of her husband and his creditors.   But when the husband effects a policy on his own life for the benefit of his wife, pays the premiums and survives her, we do not think the statute intended to deprive him of all power over the policy. Suppose he wished to change the policy in favor of some other person, could he not do it with the consent of the company ? He might wish to use or assign the policy as a means of credit or security.   He might not wish to continue the payments by which the policy was kept alive, and thus abandon the policy altogether.   Would he not have the right to discontinue payment of the premiums, and let the policy lapse ?   It seems to us that he would, or that he might bequeath or assign the beneficial interest in the policy as he might think proper. This right to dispose of the policy he would have in the absence of the statute, and we do not think the legislature intended to

deprive him of it by that provision. In *Clerk v. Durand*, 12 Wis. 223, it was held that a party who procured an insurance on his own life at his own expense, for the benefit of an infant child, as an intended gratuity or voluntary provision for such child, and afterward became unwilling or unable to keep up the policy by paying the premiums, might, while the policy was in his possession, transfer the same, by delivery, with the assent of the company, to a third person, to be kept up by him for his own benefit. To the same effect is *Godsal v. Webb*, 2 Keen, 99 (15 Eng. Ch. 100). See Angell on Fire and Life Ins., chap. 16.

We were referred to the case of *Eadie v. Slimmon*, 26 N. Y. 9, as an authority in support of the position that a policy of insurance on the life of the husband, for the benefit of the wife and children, could not be transferred so as to divest the interest of the wife. In the statement of facts in that case, it appears that the policy recited the payment by Mrs. Eadie of the premium for the first year, and for the like premium to be paid in advance every year thereafter, the company insured the life of her husband, etc. The husband and wife assigned the policy to Slimmon in payment of, or as security for, an alleged indebtedness of the husband. Slimmon threatened Eadie with a criminal prosecution for embezzlement, and the policy was assigned through apprehensions of such a prosecution. After the death of the husband, Slimmon claimed the money on the policy, but the court held the assignment void, having been extorted by a species of force and coercion which overcame the free agency of the wife. It is likewise stated, at the close of Mr. Justice SMITH's opinion, that the policy was taken under the act of 1840 ; that it was the intent of that statute to make such policies a security to the family of a married man, and a provision for their use and benefit ; and that this intent would be defeated if they were held assignable by the wife like ordinary choses in action, belonging to her in her own right as her

separate property. But as we understand the case, the insurance was effected by the wife at her expense, and the court thought it would be a violation of the spirit of the statute to hold that she could sell or traffic with her policy as though it were realized personal property or ordinary security for money. The facts of that case, however, are so unlike the present, that the decision cannot be regarded as controlling authority.

We are disposed to affirm the judgment of the county court.

*By the Court.* — Judgment affirmed.