PURTELL, Respondent, vs. CHICAGO FORGE & BOLT COMPANY and others, Appellants.

*March 14 — April 25, 1889.*

*Liens for labor, etc.: Railroad bridges: Public policy.*

1. Under sec. 1, art. XI, Const., the legislature may enact laws for the enforcement of liens for labor upon bridges and other structures of a railway company, although the same are part and parcel of its railway or essential to the operation thereof.
2. Sec. 3314, R. S., giving a lien for labor performed in or about the erection of " any bridge," applies to railroad bridges, and the public policy of this state is to enforce such a lien.

APPEALS from the Circuit Court for *La Fayette* County. The defendant the *Chicago Forge & Bolt Company,* having contracted with the defendant the *Freeport, Dodgeville & Northern Railroad Company* to erect a number of bridges across the Pecatonica river on the line of its railroad, sublet the work to the plaintiff, who erected ten such bridges in La Fayette county, for which the *Chicago Forge & Bolt Company* became indebted to him in a sum exceeding $9,000, which is unpaid. Within thirty days after the performance of such work the plaintiff served on the *Freeport, Dodgeville & Northern Railroad Company* the notice prescribed in sec. 3315, R. S., as the basis for the enforcement of a lien on such bridges as subcontractor. The plaintiff also duly filed his claim for a lien, and brought this action to enforce the same on such bridges and the land upon which they are erected, within the periods required by sec. 3318. The complaint is in the usual form of complaints in such actions. It alleges the above facts, and, further, that when such notice was served the railroad company owed the principal contractor, the *Chicago Forge & Bolt Company,* $15,000, and that afterwards the railroad company consolidated with another railroad company, which

consolidated company is the defendant the *Chicago, Madison & Northern Railroad Company,* and the owner of the said bridges and the right of way upon which the same were constructed. It also states the location of each bridge, and the amount due the plaintiff for the construction of each.

Two general demurrers to the complaint were interposed by the defendants,— one by the two railroad companies, and the other by the *Chicago Forge & Bolt Company.* Certain special grounds of demurrer were assigned, but these are not relied upon. The circuit court overruled the demurrers. From the orders overruling the same two appeals have been taken to this court,— one by the railroad companies; the other by the *Chicago Forge & Bolt Company.*

For the appellants there was a brief signed by *Stevens & Morris,* attorneys, and *Dexter, Herrick & Allen,* of counsel for the *Chicago Forge & Bolt Co.,* and the cause was argued orally by *B. J. Stevens.* They contended, *inter alia,* that the statute did not intend to give a lien upon railroad bridges. Such a lien could not be enforced in a proceeding of this kind. No part of the right of way could be sold disassociated with the franchises of the company. *East Alabama R. Co. v. Doe ex dem. Visscher,* 114 U. S. 340; *Buncombe Co. v. Tommey,* 115 id. 127–130; *People v. O'Brien,* 111 N. Y. 1. Nor can railroad property be sold in parcels. 2 Rorer on Railroads, 901–904; 2 Jones on Liens, 1609, 1618–1623; Herman on Executions, sec. 361. Nor would the purchaser at such a sale acquire any title. Not having the franchises, he could not use the right of way so purchased for railroad purposes; and if used for any other purpose it would revert to the original owner. Lewis on Em. Dom. sec. 114 (1–3), and 113 (6); *People v. Kerr,* 27 N. Y. 188; *Abendroth v. M. R. Co.* 52 N. Y. Super. Ct. 274; *In re Gilbert Elevated R. Co.* 38 Hun, 438, 448, 452.

For the respondent there were briefs by *Dey & Friend*, and oral argument by *C. C. Dey*. To the point that a railroad company is not exempt from the operation of the mechanics' lien law on the ground of public policy, they cited *Hill v. L. C. & M. R. Co.* 11 Wis. 214; *Carney v. L. C. & M. R. Co.* 15 id. 503; *Kennedy v. M. & St. P. R. Co.* 22 id. 581, 592; *Smith Bridge Co. v. Bowman*, 41 Ohio St. 37; *Botsford v. N. H., M. & W. R. Co.* 41 Conn. 454.

Lyon, J.   That the legislature has the power to enact laws for the enforcement of liens for labor upon bridges and other structures of a railway company, although the same are part and parcel of its railway or essential to the full and complete operation thereof, cannot, we think, be successfully denied.   Such power is found in sec. 1, art. XI, of the constitution, as interpreted by this court in *Attorney General v. Railroad Cos.* 35 Wis. 425.

That by enacting the present lien laws the legislature intended to exercise that power, and give a lien upon railway bridges for work performed upon them, we cannot doubt.   The language of the statute is general, and no exception of railroad bridges from its operation is expressed. So far as the same is applicable to this case, the statute (R. S. sec. 3314) is that "every person who as principal contractor performs any work or labor . . . in or about the erection . . . of any bridge . . . shall have a lien thereupon and upon the interests of the owner of such . . . bridge in and to the land upon which the same is situated."   The next section gives the same lien to a subcontractor who performs the work, to the extent of the owner's indebtedness to the principal contractor.   There is nothing in the statute which can operate to restrain these general words.   By familiar rules of statutory construction such general unqualified language must have a general application and must be held to include all bridges unless

some are excluded on grounds of public policy. This rule, in stronger terms even, was held in *Harrington v. Smith*, 28 Wis. 43, and has since been steadily adhered to. *Encking v. Simmons*, 28 Wis. 273; *Fallass v. Pierce*, 30 Wis. 443; *Chase v. Whiting*, 30 Wis. 544; *Landon v. Burke*, 33 Wis. 452; *Crerar v. M. & St. P. R. Co.* 35 Wis. 67; *Comstock v. Bechtel*, 63 Wis. 656; *Wright v. Forrestal*, 65 Wis. 341; *Hanson v. Eichstaedt*, 69 Wis. 538. The above cases do not expressly take note of considerations of public policy which may qualify the rule. It has been qualified, however, on that ground by this court. Thus in *Wilkinson v. Hoffman*, 61 Wis. 637, it was held that a subcontractor could not enforce a lien on machinery furnished by him and placed as fixtures in a building constituting a part of the water-works of the city of Madison. This was an application of the rule of *Buffham v. Racine*, 26 Wis. 449, and other cases, that a municipal corporation is not subject to the ordinary process of garnishment, although the statute giving the process is general in its terms. But in the case last cited Chief Justice Dixon dissented from the judgment, and contended for the application to municipalities of the rule afterwards held in *Harrington v. Smith* and the other cases above cited in connection therewith.

But there is no public policy prevailing in this state against enforcing a laborer's lien upon any bridge or other structure of a railroad company, for work performed thereon, no matter whether such structure is or is not part and parcel of the railway, or to what extent the enforcement of a lien thereon may interfere with or impede the operation of the railway or the exercise by the company of its corporate franchises. On the contrary, the public policy of this state is to enforce such a lien, and the company operates its railway and uses its franchises subject to the obligation to pay the claim of the lienor as established by the judgment. All this was settled by this court in *Hill v.*

*L. C. & M. R. Co.* 11 Wis. 214, and the rules there established were not abrogated or shaken by the judgment in *Wilkinson v. Hoffman*, 61 Wis. 637, and have not been disturbed by any other adjudication of this court.

Certain alleged difficulties in the enforcement of the lien, growing out of the forty-acres and one-acre limitations of the statute, are urged by the learned counsel for the defendants as reasons why the statute was not intended to make railroads subject to the lien law. These difficulties, if they exist, are not insurmountable. The courts will find some legal method to give the plaintiff the relief which the statute prescribes. We are pressed to define the precise relief to which he is entitled, but for obvious reasons we must decline to do so.

The writer will, however, on his own responsibility and without consultation with his associates, venture the suggestion that the plaintiff may be entitled to a lien on each bridge erected by him, and on the interest of the railroad company in the land covered by it (not exceeding the appropriate limitation prescribed in the statute), for his work on such bridge. Were a person to erect a house for another on each of two separate and unconnected lots of the latter, under a single contract to erect such houses for what the work was reasonably worth or for a stipulated price for each, I suppose it will be conceded that the builder could have his lien on each house and lot for the amount due him for his work on such house; and I suppose the result would be the same if the two lots adjoined, and the houses were so far separated that both could not be included in the same forty-acre or one-acre tract, as the case may be. The complaint herein is for compensation *quantum meruit*, and states separately the value of the work performed on each bridge. I do not now perceive any difference in principle between the cases supposed and the present case. But, of course, what is said in this paragraph is not authoritative.

The learned circuit judge must, in the first instance, determine for himself the law of this branch of the case.

*By the Court.*— The orders of the circuit court overruling the demurrers to the complaint are affirmed.