Estate of Breitung.

ESTATE OF BREITUNG.

*October 17 — November 5, 1890.*

*Life insurance: Change of beneficiary by will:* Lex loci contractus.

1. One who has procured a policy of insurance upon his own life for the benefit of another, and has paid the premiums thereon as they became due, may dispose of the insurance money by will to the exclusion of the beneficiary named in the policy, during the lifetime of such beneficiary.
2. Where the insurance was effected in this state, and the policy was countersigned and delivered by an agent residing here, and the money due on the policy has been paid, the law of this state is controlling as to the right of the insured to dispose thereof by will, although the policy was issued by a foreign corporation.

CASSODAY, J., dissents.

APPEAL from the Circuit Court for *Waukesha* County.

Herman W. Breitung in his life-time insured his life for the sum of $3,500, of which $2,000 was by the terms of the policies payable to his wife, and $1,500 payable to his son and daughter equally. By his will, however, the said Herman W. Breitung bequeathed $2,000 of the insurance money to his wife and $1,500 thereof to his son, making no mention of his daughter. Letters testamentary were issued to *F. T. Adler*, as executor. Two thousand dollars of the in-

surance money was paid either directly or through the executor to the widow, and $750 was in like manner paid to the guardian of the testator's son, but the remaining $750 were retained by *Mr. Adler*, who, besides being the executor of the will, was the guardian of the testator's daughter.

Upon the final accounting by *Mr. Adler* as executor, in the county court of Milwaukee county, the guardian of the testator's son sought to charge him with the sum so retained by him as guardian of the daughter. The county court held that under the will the said sum belonged to the testator's son, and that *Mr. Adler* was chargeable therewith as executor. Upon appeal the venue was changed to Waukesha county. The circuit court reversed the order of the county court, holding that the $750 in question belonged, by the terms of the insurance policies, to the daughter of the testator, and that *Mr. Adler* was not chargeable therewith as executor. The record was remanded to the county court with directions to enter a decree accordingly, with costs in favor of the executor and against the guardian of the testator's son, to be chargeable upon and collected out of the estate of said son. From the order of the circuit court the guardian of the son appealed.

For the appellant there was a brief by *A. A. Krause* and *L. W. Halsey*, and oral argument by *Mr. Halsey*.

For the respondent there was a brief by *Miller, Noyes & Miller*, and oral argument by *B. K. Miller, Jr.*

Cole, C. J. The question of law presented on this appeal is really not an open one in this court. That question is: Can a person who has procured a policy of insurance on his own life for the benefit of another, and has paid the premiums thereon as they became due, dispose of the insurance money by will to the exclusion of the beneficiary named in the policy, during the life-time of such beneficiary?

This question was, in effect, answered in the affirmative in *Clark v. Durand,* 12 Wis. 224, decided thirty years ago. That case was followed in *Kerman v. Howard,* 23 Wis. 108, and *Foster v. Gile,* 50 Wis. 603. In the last case Mr. Justice LYON, after referring to the opposite doctrine held elsewhere, says that until the legislature enacts otherwise the rule of *Clark v. Durand* and *Kerman v. Howard* must be adhered to by this court. See, also, *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542; *Bursinger v. Bank,* 67 Wis. 75.

In the present case, the deceased effected an insurance upon his life by three different policies for the benefit of "his widow and surviving children." At his death he left surviving him a widow and two children. Shortly before he died he made a will by which he gave one child all the insurance money which would by the policies have gone to both. The question is, Could he make such a disposition of the fund to the exclusion of the beneficiary named in the policy? If he could, the order of the circuit court must be reversed, and the order of the county court, directing the respondent to pay the sum of $750 of insurance money remaining in his hands to the general guardian of the minor, Bernhard P. Breitung, must be affirmed. We have already stated that, according to the established rule of this court, where one person procures a policy on his own life for the benefit of another and pays the premiums thereon, he may dispose of the insurance money by will or otherwise to the exclusion of the beneficiary named in the policy. Now it is said that this doctrine is opposed to the great weight of authority, and we are urged to change our decision on the subject so as to bring it in harmony with the decisions elsewhere. In answer to this suggestion, we observe that we feel bound to adhere to the rule which has been so long established in this state. If that rule is found not to be salutary or wise it is within the power of the legislature to

change it, and it is much better that the change come that way than that this court depart from a rule which has so long been acted upon as settled.

But it is further said that the beneficiary was living when the insured attempted by his will to dispose of the insurance money, and that this fact distinguishes the case from those which have heretofore been decided by this court. We think, however, there is no ground for a distinction. Our decisions go upon the principle that the beneficiary has no such vested pecuniary interest in the policy as deprives the insured of all power to dispose of it as he thinks proper. Certainly the insured might let the policy lapse by failing to pay the premiums as they become due, and thus all the interest of the beneficiary might be forfeited and lost. In reason and principle it would seem that a contract of this character was subject to such changes and disposition as the insured might see fit to make, and that the benefits expected from it were liable to be lost and defeated by the acts of the insured, who retains control of the policy and may see fit to make a different disposition of the fund. . .

The policies in question were issued by Massachusetts companies, and it is insisted that the law of that state should control as to the right of the insured to dispose of the insurance money. We shall not stop to inquire what the law of Massachusetts is in regard to that matter, because we are clear that the policies were Wisconsin contracts, and must be governed by the law of this state. The insurance was effected in this state, the policies were countersigned and delivered by an agent of the companies residing in Milwaukee, and the moneys due on the policies have been paid. The question now is, Who is entitled to these funds? What the law of Massachusetts has to do with that question is not very obvious. Our law must certainly control it.

We think it was not error to make the costs chargeable

upon and collected out of the estate of the infant ward. That, we think, was in accord with the decisions of this court in respect to costs in such cases.

CASSODAY, J. In *Foster v. Gile*, 50 Wis. 603, a father procured an insurance upon his life, payable on his death to his two minor sons, "their guardians, executors, administrators, or assigns." The two sons died, leaving their father and mother them surviving. About a month afterwards, the father died, leaving his widow, the mother of the sons, him surviving. An administrator was appointed for the estate of the father, and also an administrator for the estates of the sons, and both administrators claimed the insurance money. All the members of this court agreed that the administrator of the sons was entitled to the money as against the administrator of the father. While conceding that the sons had "an actual subsisting interest in the policy," yet a majority of the court, in deference to *Clark v. Durand*, 12 Wis. 223, and *Kerman v. Howard*, 23 Wis. 108, maintained that in such a case "the interest of the beneficiary is subject to the right of the insured, who has paid the premium, to revoke the same and retain it himself or vest it elsewhere;" and, because the father had not thus revoked the gift, they there held that the administrator of the sons was entitled to the insurance money.

In a separate opinion in the same case, I endeavored to distinguish *Clark v. Durand* and *Kerman v. Howard, supra*, and to maintain, upon principle and numerous authorities there cited, in effect, that an insurance policy is a contract to pay money on conditions, and as such is personal property; that it is an entire contract, even where the premiums are payable in instalments; that each instalment is a part of the consideration of the entire contract; that the property in such policy must have an owner in whom it is vested from the very moment when it is made; that it is a

*chose in action*, and governed by the same principles applicable to other agreements involving pecuniary obligations; that by the policy in that case the company had agreed to pay, not to the father, but to the two sons, "their guardians, executors, administrators, or assigns," at the time and upon the conditions named; that, had the sons attained their majority and the father died first, they might have maintained an action at law in their own names, upon the policy, without the intervention of any transfer or any legal proceedings; that such policy was in legal effect an executed gift from the father to the sons, the same as though he had taken a paid-up policy on his own life, payable to his sons, or loaned a thousand dollars and taken therefor a note and mortgage in the name of his sons; that such gift could not be revoked by the father alone, and certainly not without the consent of the company; that the administrator of the sons was entitled to the insurance money because the policy belonged to the sons at the time of their deaths; that because it was at that time their property, it then necessarily passed into the custody of the law, and hence could not subsequently be transferred by the father, nor, upon his death, pass to his administrator. 50 Wis. 609–614.

The conviction thus entertained has since been confirmed by reflection and by numerous subsequent adjudications in other courts. Some of them will here be cited. In the recent case of *Cent. Nat. Bank v. Hume*, 128 U. S. 195, it was held by a unanimous court that " it is a general rule that a life insurance policy and the money to become due under it belong, the moment it is issued, to the person named in it as beneficiary, and that there is no power in the person procuring the insurance, by any act of his, by deed or will to transfer to any other person the interest of the person named." Other federal judges, including Judge DYER of this state, have held the same way. *Brockhaus v. Kemna*,

7 Fed. Rep. 609; *Timayenis v. Union M. L. Ins. Co.* 13 Ins. Law J. 762, 21 Fed. Rep. 223. The late English authorities are to the same effect. *In re King (Sewell v. King)*, L. R. 14 Ch. Div. 179; *In re Richardson (Weston v. Richardson)*, 47 Law T. (N. S.), 514; *Ex parte Dever (In re Suse)*, L. R. 18 Q. B. Div. 664. The same rule generally prevails in the different state courts of this country. *Glanz v. Gloeckler*, 104 Ill. 573, 44 Am. Rep. 94; *Pence v. Makepeace*, 65 Ind. 345; *Wilburn v. Wilburn*, 83 Ind. 55; *Harley v. Heist*, 86 Ind. 196, 44 Am. Rep. 285; *Allis v. Ware*, 28 Minn. 166; *McClure v. Johnson*, 56 Iowa, 620; *Olmstead v. Masonic M. B. Soc.* 37 Kan. 93; *Manhattan L. Ins. Co. v. Smith*, 44 Ohio St. 156; *Robinson v. Duvall*, 79 Ky. 83; *Vollman's Appeal*, 92 Pa. St. 50; *Gosling v. Caldwell*, 1 Lea, 454; *Connecticut M. L. Ins. Co. v. Ryan*, 8 Mo. App. 535; *Crittenden v. Phœnix M. L. Ins. Co.* 41 Mich. 442; *Mullins v. Thompson*, 51 Tex. 7; *City S. Bank v. Whittle*, 63 N. H. 587; *Cables v. Prescott*, 67 Me. 582; *Martin v. Ætna L. Ins. Co.* 73 Me. 25; *Fowler v. Butterly*, 78 N. Y. 68; *Unity M. L. A. Asso. v. Dugan*, 118 Mass. 219; *Norris v. Mass. M. L. Ins. Co.* 131 Mass. 294.

I think the case at bar is clearly distinguishable from *Clark v. Durand*, 12 Wis. 223, and *Kerman v. Howard*, 23 Wis. 108, and should be affirmed upon the well recognized principles of law applicable to *Foster v. Gile*, 50 Wis. 603, notwithstanding such affirmance would be in conflict with some things said in the opinions in those cases. "It is a general rule," said MARSHALL, C. J., "that the positive authority of a decision is co-extensive *only* with the facts on which it is made." *Ogden v. Saunders*, 12 Wheat. 333; *Evans v. Virgin*, 72 Wis. 427.

The common law as well as truth is always in harmony with itself. Assumed evidences of it, in the shape of judicial decisions, may be in conflict, and sometimes are. It is more important to preserve the law in its integrity than an

erroneous interpretation of it. The repetition of an exposed error is more destructive than the original. No decision should take rank as an evidence of law which is not in harmony with the logic of the law,— especially when sanctioned by the great weight of authority.

The case at bar is also distinguishable by reason of the fact that the policies, or some of them, were payable at the office of the company and expressly declared that the contract should be governed and construed by the laws of Massachusetts, and provided, in effect, that no alteration or assignment thereof should be made except in writing and with the consent of the company.

It is unnecessary to add that I dissent from the decision in this case.

*By the Court.*— The order of the circuit court is reversed, and the order of the county court is affirmed, and the cause is remanded for further proceedings according to law.